Cynthia KING, Plaintiff–Appellant,

v.

TOWN OF HEMPSTEAD, Gregory Peterson, Robert Francis and Town of Hempstead Department of Planning and Economic Development, Defendants–Third–Party–Plaintiffs–Appellees,

A. Johnson Construction
Corp., Defendant,

Allen M. Johnson, ADJJ Construction & Holding Corp., Aldon General Contracting, Inc. and Allen Johnson General Contracting Company, Third–Party–Defendants.

Docket No. 98–7297.

United States Court of Appeals,
Second Circuit.

Argued Nov. 18, 1998.

Decided Dec. 1, 1998.

trict Court for the Eastern District of New York (Nina Gershon, *Judge*) entered on February 11, 1998, granting defendants-appellees' Rule 12(b)(6) motion to dismiss her 42 U.S.C. § 1983 action.[1] King claims that 42 U.S.C. § 5301(c), a provision of the Housing and Community Development Act of 1974 ("HCDA"), and 24 C.F.R. § 886.307(a), a regulation promulgated pursuant to the United States Housing Act of 1937, 42 U.S.C. § 1437–1437aaa–7 (1994), create a federal right that can be enforced through a § 1983 suit.[2] We agree with the district court that the provisions King relies upon create no federal rights enforceable via § 1983 and affirm.

## BACKGROUND

In 1991, King purchased a home from the Town of Hempstead's Department of Planning and Economic Development ("DPED"). Her house was built upon land purchased with funds provided to the DPED pursuant to the HCDA, and as a result of this federal subsidy, King was able to buy the house for $85,000. After moving in, however, King discovered a number of serious defects in the structure. She brought an action under § 1983 and state law alleging that the DPED had negligently administered HCDA funds by failing to monitor the performance of the contractor who built the home.

The district court granted defendants-appellees' Rule 12(b)(6) motion to dismiss King's complaint. The court held that no § 1983 action could lie against the DPED since "[p]laintiff here has not met the most basic requirement [of § 1983], namely that she can identify a particular statutory provision which establishes a federal right to the relief that she is seeking."

Richard Hamburger, Hamburger, Maxson & Yaffe, LLP, Melville, NY (Frederick K. Brewington, Hempstead, NY and David N. Yaffe, Hamburger, Maxson, on the brief), for Plaintiff–Appellant.

John E. Ryan, Kwiatkowski & Ryan, Floral Park, NY, for Defendants–Third–Party–Plaintiffs–Appellees.

Before: MINER, CALABRESI, and SACK, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Cynthia King appeals from a judgment of the United States Dis-

## DISCUSSION

"We review the district court's dismissal of a complaint pursuant to Rule

1. Defendants-appellees' motion for summary judgment was treated, by agreement, as a Rule 12(b)(6) motion to dismiss.

2. Before the district court, King relied only on § 5301(c) and § 886.307(a) as the basis for her § 1983 suit. For the first time on appeal, King contends that other provisions of the HCDA and other regulations issued pursuant to the statute can support her claim. We deem these arguments waived and focus only on King's reliance on § 5301(c) and § 886.307(a).

12(b)(6) *de novo." Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). And "[w]e take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[ ]." *Id.*

To bring a § 1983 action, "a plaintiff must assert the violation of a federal *right,* not merely a violation of federal *law." See Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). The Supreme Court has set forth a three-prong test to determine whether a statutory provision gives rise to a federal right:

> First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms.

*Id.*(internal citations omitted). The High Court also noted that an inquiry into whether a statute creates a right enforceable by a § 1983 action must be based on a specific statutory provision, and not just on a general assertion that a particular statute creates "rights." *See id.* 117 S.Ct. at 1360–61.

With these general guidelines in mind, we have held that one provision of the HCDA, 42 U.S.C. § 5310, does create an implied right of action for purposes of a § 1983 suit. *See Chan v. City of New York,* 1 F.3d 96, 106 (2d Cir.1993). Section 5310 provides that "laborers and mechanics" employed with HCDA grant money are, at a minimum, to be paid at federally recognized prevailing wage rates. *See* 42 U.S.C. § 5310 (1994); *Chan,* 1 F.3d at 101. We stated,

> the persons whose wages are the subject of § 5310 are clearly specified: they are "laborers and mechanics." The statutory requirement as to their wages is not merely a hortatory "reasonable efforts" provision ... rather, the statute states that at least the required level of wages "shall be paid." Further, the minimum level of those wages is neither vague nor speculative ... rather,

it is determinable by reference to an unambiguous specified standard set by a federal official....

*Chan,* 1 F.3d at 104. We concluded, therefore, that § 5310 created a federal right that could support a § 1983 action. *See id.* at 106.

This case requires us to examine an entirely different provision of the HCDA. The HCDA, 42 U.S.C. § 5301(c) provides, in pertinent part:

> The primary objective of this chapter ... is the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income. Consistent with this primary objective, not less than 70 percent of the aggregate of the Federal assistance provided to States and units of general local government ... shall be used for the support of activities that benefit persons of low and moderate income ... directed toward the following specific objectives ...
>
> (2) the elimination of conditions which are detrimental to health, safety, and public welfare, through code enforcement, demolition, interim rehabilitation assistance, and related activities;
>
> (3) the conservation and expansion of the Nation's housing stock in order to provide a decent home and a suitable living environment for all persons, but principally those of low and moderate income....

42 U.S.C. § 5301(c).

The essence of King's argument is that the DPED violated § 5301(c) by failing to provide her with "a decent home and a suitable living environment," and that the violation implicates a federal right that she can enforce pursuant to § 1983. Moreover, King contends that § 5301(c) provides an objective yardstick by which a violation of this right can be evaluated since, she contends, the provision incorporates state and local housing codes by its reference to "code enforcement" as a goal of the statute.

This contention is unavailing. Most of the language of § 5301(c) merely sets forth gen-

eral goals for the programs funded by the HCDA, including housing code enforcement. As such, it does not create the kind of "binding obligation" required by the third prong of *Blessing* to create a federal right enforceable by a § 1983 suit.[3] We hold, therefore, that § 5301(c) does not create a federal right enforceable by the § 1983 suit that plaintiff has brought.[4]

■ King also contends that 24 C.F.R. § 886.307(a) supports her § 1983 claim. The circuits are divided on the question of whether a regulation, standing alone, is sufficient to create a federal right necessary for a § 1983 suit. *Compare Loschiavo v. City of Dearborn*, 33 F.3d 548, 553 (6th Cir.1994) (holding that a regulation can create a federal right for purposes of § 1983), *with Smith v. Kirk*, 821 F.2d 980, 984 (4th Cir.1987) ("An administrative regulation, however, cannot create an enforceable § 1983 interest not already implicit in the enforcing statute.").

We do not, however, need to decide this issue. Even assuming *arguendo* that a regulation might be enough to create a federal right capable of supporting King's § 1983 suit, § 886.307(a) does not apply to the home King purchased. That regulation covers only "Section 8" housing, which is private *rental* housing subsidized by federal funds. *See* 24 C.F.R. § 886.301; *see also Comer v. Cisneros*, 37 F.3d 775, 781 (2d Cir.1994) (describing the Section 8 program).[5] It is, therefore, inapplicable to King's case.

The judgment of the district court is affirmed.

---

**3.** The only mandatory element of § 5301(c) is that 70% of the funds appropriated pursuant to the HCDA "shall be used for the support of activities that benefit persons of low and moderate income." *See* 42 U.S.C. § 5301(c). But this 70% requirement is not at issue in the case before us.

**4.** We do not have before us, and hence express no views on, the possibility that a § 1983 action may lie under some other provision of the HCDA for a plaintiff in King's situation.

**5.** Section 886.307(a) sets forth various mandatory criteria for housing built under the Section 8 program of the United States Housing Act of 1937. *See* 24 C.F.R. §§ 886.301–886.302, 886.307.