**EVAC, LLC, Plaintiff,**

v.

**George E. PATAKI, Individually, James W. McMahon, Individually, et al., Defendants.**

**No. 99–CV–1121.**

United States District Court, N.D. New York.

March 3, 2000.

Jerry C. Leek, Potsdam, NY, for Plaintiff.

Charles J. Quackenbush, AAG, Attorney General of the State of New York, Albany, NY, for Defendants McMahon and Pataki, of counsel.

### MEMORANDUM—DECISION & ORDER

McAVOY, Chief Judge.

Plaintiff, Evac, LLC ("Evac"), commenced this action on July 21, 1999 alleging claims under the Sherman Antitrust Act of 1890, 15 U.S.C. § 1, *et. seq.* ("Sherman Act"), the Clayton Antitrust Act, 15

U.S.C. § 15, *et. seq.* ("Clayton Act"), and New York's Donnelly Act, N.Y. Gen. Bus. Law § 340(1) ("Donnelly Act"). Evac further asserts claims under the Civil Rights Act, 42 U.S.C. § 1983, alleging that Defendants violated its rights under the Due Process Clause, Equal Protection Clause, Takings Clause, and the Federal Aviation Act, 49 U.S.C. § 40101, *et. seq.* (the "FAA") by providing free medical air transport services that had an adverse impact on its business. Plaintiff seeks injunctive and declaratory relief, monetary damages, and attorney's fees and costs.

Defendants Pataki and McMahon ("Defendants") move to dismiss Evac's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and/or qualified immunity. Evac cross-moves pursuant to Fed. R. Civ. P. 15(a) for leave to amend the Complaint to add causes of action based on the Supremacy and Commerce Clauses.

## I. Background

■ In considering a motion to dismiss, the Court accepts as true the factual allegations in the Complaint. *See Dwyer v. Regan,* 777 F.2d 825, 828–29 (2d Cir.1985), *modified on other grounds,* 793 F.2d 457 (1986). Those allegations follow.

Evac is a medical air transport service, established in January 1996, operating in upstate New York in the region of Lewis, Jefferson, and St. Lawrence counties. Evac is a for-profit LLC, subject to federal taxation and FAA regulations. For approximately a year and a half, Evac operated a successful air transport service for various hospitals. Evac maintained a 24–hour, seven day a week, emergency on call service, which could perform an emergency lift off within seven minutes. In 1998, Defendants began providing free medical air transportation services using New York State helicopters. The helicopter service provided by Defendants may not be as

timely as Evac's. Moreover, as a state entity, Defendants do not pay federal taxes and are not subject to FAA regulations.[1]

Evac's business has decreased drastically since Defendants began providing free transport services. As a result, Evac now runs a 12–hour service instead of a 24–hour service.

## II. Discussion

Presently before the Court is Defendants' motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Evac's Complaint in its entirety and Evac's cross-motion for leave to amend the Complaint pursuant to Fed. R. Civ. P. 15(a).

### A. Standard

A district court should grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see also Annis v. County of Westchester,* 36 F.3d 251, 253 (2d Cir.1994). In applying this standard, a district court must "read the facts alleged in the complaint in the light most favorable" to the plaintiff, and accept these allegations as true, *id.* at 249, 109 S.Ct. 2893; *see also Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.,* 23 F.3d 636, 639 (2d Cir.1994); *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991); *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989), and to consider documents attached to or incorporated by reference in the complaint. *See Romea v. Heiberger & Assocs.,* 163 F.3d 111, 114 (2d Cir.1998) (citing *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998)). The Court's duty is "to

---

1. The FAA regulations contain an exemption for a "public aircraft." 49 U.S.C. § 40102(37).

assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980); *accord Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). The appropriate inquiry, therefore, is not whether a plaintiff will ultimately prevail but whether he is entitled to offer evidence to support the claims. *See Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 124 (2d Cir.1991) (plaintiff is not compelled to prove his case at the pleading stage). Therefore, the court should not dismiss on a Rule 12(b)(6) motion unless it appears clear that the plaintiff cannot in any way establish a set of facts to sustain his claim which would permit relief. *See Hughes v. Rowe*, 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980); *Cooper*, 140 F.3d at 440 ("Although bald assertions and conclusions of law are insufficient, the pleading standard is nonetheless a liberal one."); *Boddie v. Schnieder*, 105 F.3d 857, 860 (2d Cir.1997); *Bernheim v. Litt*, 79 F.3d 318, 321 (1996); *Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986).

Additionally, the Rules do not require the claimant to set out in detail the facts upon which the claim is based, but only that a defendant be given "fair notice of what the claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987).

It is with these standards in mind that the Court addresses Evac's claims.

### B. Section 1983 Claims

Evac asserts both statutory and constitutional claims pursuant to Section 1983 against Defendants McMahon and Pataki. In response, Defendants contend that Evac's claims should be dismissed because: (1) Defendants were not personally involved in the complained of actions; (2) Evac's claims are not properly pled or are not viable; and (3) Defendants are shielded from liability by Eleventh Amendment and/or qualified immunity. The Court will address these claims *in seriatim.*

### 1. Personal Involvement

Defendants first contend that Evac's Section 1983 claims should be dismissed because Evac does not allege particular allegations of individual conduct, without which a Section 1983 claim must fail. *See* Def. Mem. of Law at 17.

To state a cognizable claim under Section 1983, Evac must allege: (1) that some person has deprived it of a federal right and (2) that the person who deprived it of that right acted under the color of state law. *See Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Evac must also show that the Defendants were personally involved in the complained of conduct. *See, e.g., Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985). "Where damages are sought in a Section 1983 action, the defendant must be responsible for the alleged constitutional deprivation: '[t]he general doctrine of respondeat superior does not suffice and a showing of some personal responsibility of the defendant is required.'" *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060, 1065 (2d Cir. 1989) (internal quotations and citations omitted); *see also Monell v. Dep't of Social Serv.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (rejecting respondeat superior liability in section 1983 context). Accordingly, a court must look to the extent of each Section 1983 defendant's involvement in the complained of acts to determine liability. *See Al–Jundi*, 885 F.2d at 1065.

In this case, Evac alleges that Defendants are liable in their supervisory capacity. When supervisory liability is alleged, the requisite personal involvement

may be shown in one or more of the following five ways:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Evac's Complaint alleges that "defendants Pataki and Mac Mahon [sic] joined the combination and boycott in providing free air transportation services contrary to federal law. The latter defendant provided free service of the New York State helicopters contrary to Federal Law." Complaint, ¶ 17. Although the Complaint does not explain how Defendants allegedly joined the boycott or whether Defendants had personal knowledge that New York State helicopters were used for medical transport, when developed, the facts could show that Defendants had sufficient personal involvement to create supervisory liability under Section 1983. Accordingly, the Complaint alleges sufficient personal involvement to survive a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). *See, e.g., Ricciuti,* 941 F.2d at 123 (Finding that a Section 1983 claim should not be dismissed for failure to state a claim unless it appears "beyond a doubt" that the plaintiff can prove no set of facts in support of the claim.). The Court will next address Evac's allegations that Defendants' actions violated its federal (constitutional and statutory) rights.

### 2. FAA Claims

Evac's fourth cause of action asserts that Defendants violated 42 U.S.C. § 1983 "by denying [Evac] the benefit of the Federal Aviation Act ... by operating a public aircraft when a private operator is reasonably available." *See* Complaint, ¶ 47. In its Memorandum of Law, Evac states "[t]he [plaintiff does] not make a claim against [the State Defendants] other than the fact they are not supervising state helicopters...." Pl. Mem. of Law at 20. Defendants move to dismiss this claim asserting that the FAA does not establish private rights that can be enforced via Section 1983. The pertinent inquiry, therefore, is whether the FAA creates enforceable rights under Section 1983.

In order to seek redress through Section 1983 a plaintiff must first assert that the alleged violation infringed on a federal right. *See Blessing v. Freestone,* 520 U.S. 329, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997). Three factors are considered when determining whether a particular statutory provision gives rise to a federal right: (1) whether Congress "intended that the provision in question benefit the plaintiff;" (2) whether the right protected by the statute is so "vague and amorphous" that its enforcement would "strain judicial competence;" and (3) whether the statute, by using "mandatory rather than precatory language," unambiguously imposes a binding obligation upon the states. *See id.* at 1358–59. "Plaintiff has the burden to 'identify with particularity' the rights she claims and the specific statutory provisions that she asserts apply." *Corcoran v. Sinclair,* 1999 WL 177444, at *5 (S.D.N.Y. Mar.30, 1999) (applying *Blessing* ).

If a statutory provision satisfies the three *Blessing* criteria, there is a rebuttable presumption that the right is enforceable under Section 1983. *See American Auto. Mfrs. Ass'n v. Cahill,* 53 F.Supp.2d 174, 182 (N.D.N.Y.1999) (Kahn, J.) (applying *Blessing* ). The burden then shifts to

the defendant to show that "by express provision or other specific evidence from the statute itself... [Congress] intended to foreclose such enforcement." *Wilder v. Virginia Hosp. Assoc.*, 496 U.S. 498, 520–21, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990) (quoting *Wright v. City of Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987)). A Section 1983 suit alleging statutory violations is precluded if the statute at issue specifically prohibits such suits or if the statute creates "a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983." *Blessing*, 117 S.Ct. at 1360.

■ In this case, the only specific provision of the FAA Evac cites is 49 U.S.C. § 40102(37), which defines public aircraft. Congress enacted this provision of the FAA to delineate which aircraft are "public" within the meaning of the statute. Evac, a private aircraft operator, is not an intended beneficiary of this definition. Moreover, the provision is merely a definition and does not create a specific right enforceable through Section 1983. Significantly, Evac does not cite any specific provisions of the FAA which Defendants would violate if, as alleged, they fall outside of the definition of public aircraft. The general allegation that by operating medical transport services Defendants are violating the FAA is insufficient to establish an enforceable right under Section 1983. *See Blessing*, 117 S.Ct. at 1360; *King v. Town of Hempstead*, 161 F.3d 112, 114 (2d Cir.1998) ("The High Court also noted that an inquiry into whether a statute creates a right enforceable by a § 1983 action must be based on a specific statutory provision and not just on a general assertion that a particular statute creates 'rights.'") (citing *Blessing*, 117 S.Ct. at 1360); *Legal Services of Northern California v. Arnett*, 114 F.3d 135, 138–40 (9th Cir.1997) (stating that the issue under *Blessing* is "whether particular statutory provisions create specific enforceable rights, rather than considering the statute

and purported rights on a more general level."); *German v. Fed. Home Loan Mortgage Corp.*, 1999 WL 1095595, at *2 (S.D.N.Y. Dec. 2, 1999) (Noting that after *Blessing* parties must allege violations of specific statutory provision rather than generally assert that a federal statute creates rights.). Evac has failed to establish a federal right under the FAA and, thus, cannot maintain a Section 1983 claim on this ground.

■ Moreover, even if Evac had specifically alleged a section of the FAA that created a federal "right," the Section 1983 action would likely fail. As explained above, satisfaction of the *Blessing* inquiry results in a rebuttable presumption that a right is enforceable under Section 1983. This presumption is defeated if, by creating a comprehensive statutory enforcement scheme, Congress impliedly precluded a Section 1983 action. The FAA sets forth just such a scheme. *See* 49 U.S.C. § 46101. In fact, prior to the Supreme Court's decision in *Blessing*, which changed the analytical framework for deciding whether a federal statute creates an enforceable right, the Second Circuit found that "[t]he comprehensive enforcement scheme provided in the Federal Aviation Act manifests congressional intent to foreclose an action under § 1983." *Montauk–Caribbean Airways, Inc. v. Hope*, 784 F.2d 91, 98 (2d cir.) (citations omitted), *cert. denied*, 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986); *see also Bruneau v. South Kortright Cent. Sch. Dist.*, 163 F.3d 749, 756–59 (2d Cir.1998) (holding that Title IX's complex administrative enforcement mechanism suggested that Congress sought to foreclose Section 1983 relief), *cert. denied*, 526 U.S. 1145, 119 S.Ct. 2020, 143 L.Ed.2d 1032 (1999).

Accordingly, the Court finds that Evac cannot establish a prima facie case under Section 1983 because it did not allege an enforceable federal "right" under the FAA. Therefore, Defendants' motion to dismiss this claim is granted.

### 3. Equal Protection Claim

■ Evac next asserts that by operating New York State Police helicopters, which are not subject to FAA regulation or federal taxation, to conduct inter-facility transfers free of charge when Evac is available for these services, Defendants violate Evac's Fourteenth Amendment Equal Protection rights. In response, Defendants argue that this claim should be dismissed because the use of State helicopters for medical transport satisfies the rational basis test.

The Equal Protection Clause provides, in pertinent part, that "no State shall … deny to any person within its jurisdiction the equal protection of the laws." Equal protection challenges are limited to parties or entities that are similarly situated. Evac does not claim that it is being treated differently than similarly situated businesses, instead, Evac asserts that it is being treated differently from the State. Assuming, without deciding, that the parties are similarly situated such that an equal protection claim is proper, the Court will consider whether Defendants' actions pass constitutional muster.

Because Evac's equal protection challenge is not based on infringement upon a fundamental right or suspect classification, but rather challenges a health and welfare action, it falls under the rational basis sphere of review. *See Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Thus, Defendants' actions "must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for" the challenged action. *Id.*, at 320, 113 S.Ct. 2637, (citations omitted). Defendants' cited interest in promoting medical air transport for citizens of New York clearly satisfies the minimal requirements of rational basis review. *See id.; see also General Motors Corp. v. Tracy*, 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997). Accepting all of Evac's factual allegations as true and drawing all reasonable inferences from those allegations in the light most favorable to Evac, *see Desiderio v. Nat'l Assoc. of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999), *petition for cert. filed*, No. 95–1285 (Jan. 31, 2000), the Court finds that Defendants' actions satisfy the rational basis test. Thus, Evac cannot maintain an equal protection claim and Defendants' motion to dismiss this claim is granted.

### 4. Due Process and Takings Claims

Evac next challenges Defendants' non-profit medical transport service based on the Takings and Due Process Clauses of the Constitution. Defendants first assert that these claims must be dismissed because Evac has not and cannot establish a protectible property interest.

### (a) Protectible Property Interest

■ In order to establish a substantive due process, procedural due process, or takings claim under the Fourteenth Amendment, a plaintiff must first demonstrate that the state interfered with a constitutionally cognizable property interest. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (procedural due process); *Story v. Green*, 978 F.2d 60, 62 (2d Cir.1992) (takings); *RRI Realty Corp. v. Inc. Village of Southampton*, 870 F.2d 911, 918 (2d Cir.), *cert. denied*, 493 U.S. 893, 110 S.Ct. 240, 107 L.Ed.2d 191 (1989). The Supreme Court has found that "to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.… He must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The Supreme Court has further held that "[w]hile a business's assets are property, and any state taking of those assets is a 'deprivation,' business in the sense of the activity of doing business or of making a profit is not property at all….," *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 119

S.Ct. 2219, 2222, 144 L.Ed.2d 605 (1999), and the Second Circuit has found that the loss of a future business opportunity is not a protectible property interest. *See Asbestec Const. Servs. Inc. v. U.S. E.P.A.*, 849 F.2d 765, 770 (2d Cir.1988). Similarly, other courts have found that potential business interests are not protectible. *See, e.g., Sanitation & Recycling Ind., Inc. v. City of New York*, 928 F.Supp. 407, 420–21 (S.D.N.Y.1996), *aff'd*, 107 F.3d 985 (2d Cir.1997) (the right to continue business on the same terms as in the past is not a protectible property right); *Hunter v. SEC*, 879 F.Supp. 494, 497 (E.D.Pa.1995) (lost profits from potential business opportunities are not protectible property interests).

■ Evac has not demonstrated a protectible property interest. In fact, in its Complaint, Evac does not specifically assert any property interest implicated by Defendants' actions. Evac does not have a protectible property interest in potential customers who are now transported by the State, *see Hunter*, 879 F.Supp. at 497, the proceeds from these customers, *see id.*, future business opportunities, *see College Savings Bank*, 119 S.Ct. at 2222, or in continuing to do business as it did prior to the State's provision of free medical transport services. *See Sanitation & Recycling Ind.*, 928 F.Supp. at 420–21. Accepting all Plaintiff's allegations as true and drawing all favorable inferences from these allegations, in the absence of a protectible property interest, the Court cannot conclude that Evac's due process and takings claims are cognizable. *See, e.g., Zahra v. Town of Southold*, 48 F.3d 674, 680–82 (2d Cir. 1995). Accordingly, the Court grants Defendants' motion to dismiss these claims.

Assuming, arguendo, that Evac has a protectible property interest that Defendants interfered with, Evac's claims still cannot stand.

**(b) Takings Claim**

■ The Supreme Court has not developed a rigid test to determine whether a governmental action is a Taking within the meaning of the Fourteenth Amendment; instead, the determination depends on a factual inquiry into the circumstances of each individual case. *See Connolly*, 475 U.S. at 225, 106 S.Ct. 1018. The Supreme Court has identified three factors with "particular significance" in this inquiry: "(1) 'the economic impact of the regulation on the claimant'; (2) 'the extent to which the regulation has interfered with distinct investment-backed expectations;' and (3) 'the character of the governmental action.' " *Id.* (quoting *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). An examination of these factors indicates that because the State did not physically invade, permanently appropriate, or nullify all economically viable uses of Evac's property, the State's provision of free medical transport services does not amount to a compensable taking. *See id.; see also Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (discussing definition of "total taking").

**(c) Procedural Due Process**

■ As discussed above, Evac's due process claim [2] must fail because it has not alleged a protectible property interest. Alternatively, Evac's procedural due process claim must fail because Evac could have sought meaningful review of the State's actions within the state court system. Where, as here, an alleged deprivation of property is attributable to unauthorized conduct of state officials rather than established state procedure, there is no denial of "due process," and therefore, no constitutional violation on which to base a

---

**2.** To state a claim for a violation of procedural due process, a plaintiff must: (1) identify a property interest; (2) demonstrate that the governmental action with respect to that property right amounted to a deprivation; and (3) show that the deprivation was without due process of law. *See College Sav. Bank*, 119 S.Ct. at 2208.

Section 1983 claim if an adequate post-deprivation hearing is available. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Kraebel v. NYC Dept. of Hous. and Preservation & Dev.*, 959 F.2d 395, 404 (2d Cir.), cert. denied, 506 U.S. 917, 113 S.Ct. 326, 121 L.Ed.2d 245 (1992). In this case, Evac could have challenged the State's actions in state court. This satisfies procedural due process.

### (d) Substantive Due Process

■ Evac's substantive due process claim[3] fails because Evac cannot prove any set of facts that would render the State's use of helicopters for medical transport "arbitrary." "An arbitrary action", in the constitutional sense, means more than just an "incorrect or ill-advised" action; it must be "conscience-shocking" or "oppressive in a constitutional sense." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994); *see also County of Sacramento v. Lewis*, 523 U.S. 833, 844, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043, (1998)("[O]nly the most egregious official conduct can be said to be arbitrary in the constitutional sense.") (internal quotation and citation omitted). The State's decision to provide free medical transport services to patients was not arbitrary or outrageous, in fact, the State's action falls squarely within its police power. *See, e.g., Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ("Throughout our history the several States have exercised their police powers to protect the health and safety of their citizens."); *Medical Soc. of the State of New York v. Cuomo*, 976 F.2d 812, 816 (2d Cir.1992) ("The regulation of public health and the cost of medical care are virtual paradigms of matters traditionally within the police powers of the state.") (citing *Hillsborough County v. Automated Med. Lab, Inc.*, 471 U.S. 707, 719, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985)).

Accordingly, Evac's substantive due process claim must fail.

### C. Antitrust Claims

Evac's fifth cause of action alleges that Defendants have violated Section 1 of the Sherman Act, 15 U.S.C. § 1, et. seq. and the Clayton Act, 15 U.S.C. § 15, et seq. "in that they have made concerted agreements to transport patients to Burlington, [Vermont], Fletcher Allen Hospital by using tax payer paid free services of the New York State Police. They have also used and coerced patients of Northern New York to use Valet Air out of Burlington, Vermont when fixed wing transport is an option without ever mentioning the plaintiff." Complaint, ¶ 49. Defendants argue that this claim must be dismissed because Evac has not defined a relevant market or alleged specific antitrust injury, as required by the Sherman and Clayton Acts and, thus, Evac does not have standing to bring this claim. *See* Defs. Mem. of Law at p. 11.

■ "A private plaintiff seeking damages under the antitrust laws must establish standing to sue." *Florida Seed Co., Inc. v. Monsanto Co.*, 105 F.3d 1372, 1374 (11th Cir.), cert. denied, 522 U.S. 913, 118 S.Ct. 296, 139 L.Ed.2d 228 (1997). To establish standing, a plaintiff must allege an "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Sage Realty Corp. v. ISS Cleaning Servs. Group, Inc.*, 936 F.Supp. 130 (S.D.N.Y. 1996) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)); *see also Balaklaw v. Lovell*, 14 F.3d 793, 797 (2d Cir.1994); *Re-Alco Indus., Inc. v. Nat'l Ctr. for Health Educ., Inc.*, 812 F.Supp. 387, 391 (S.D.N.Y.1993) (an antitrust complaint must adequately define the relevant

---

**3.** The elements of a substantive due process claim are: (1) the existence of a constitutional right and (2) state action interfering with that right that is arbitrary in the constitutional sense. *See Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994); *see also Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992).

product market, allege antitrust injury, and allege conduct in violation of the antitrust laws). Accordingly, a plaintiff bringing an antitrust claim must demonstrate as a threshold matter "that the challenged action has had an actual adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." *Capital Imaging Assoc., P.C. v. Mohawk Valley Med. Assoc., Inc.*, 996 F.2d 537, 543 (2d Cir.), *cert. denied*, 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993); *see also George Haug Co. v. Rolls Royce Motor Cars, Inc.*, 148 F.3d 136, 139 (2d Cir.1998). This requirement underlines the policy that antitrust laws are designed to protect competition, rather than competitors. *See Brunswick Corp.*, 429 U.S. at 489, 97 S.Ct. 690. Therefore, to survive a motion to dismiss, a plaintiff must plead specific facts demonstrating that the defendants' conduct "injured the competitive structure of the market" rather than the plaintiff alone. *Naso v. Park*, 850 F.Supp. 264, 271 (S.D.N.Y.1994).

▆▆▆ Evac has clearly alleged injury to its own business interests. The Complaint is flawed, however, insofar as it fails to define a relevant product or geographic market in which the alleged injury occurred and fails to allege "antitrust injury," or, detrimental effect on market-wide competition.

First, Evac's Complaint is flawed because it does not sufficiently allege injury to market-wide competition. The relevant portions of the Complaint allege that Evac has been taken "out of the loop" in medical transport services, *see* Complaint ¶ 18, that Defendants have told prospective patients that if they fly Fletcher Allen Hospital with North Country Life Flight the service is free whereas if they choose a different carrier "it will cost [them] money," *id.* at ¶ 31, and that Evac has been injured by Defendants provision of free air transport services. Evac also alleges harm to the public, insofar as the free State service may be slower than Evac's. *See id.* at

¶ 34. However, Evac does not allege that Defendants' actions injured market-wide competition as opposed to Evac's individual business. Without even a basic allegation of market injury, the Court cannot infer this injury. *See Electronics Comm. Corp. v. Toshiba Am. Consumer Prods., Inc.*, 129 F.3d 240, 245 (2d Cir.1997) ("Without any allegation as to how market-wide competition will be affected, the complaint fails to allege a claim on which relief may be granted."); *see also,S.O. Textiles Co., Inc. v. A & E Prods. Group*, 18 F.Supp.2d 232, 243 (E.D.N.Y.1998).

The Complaint is further flawed because it does not allege a relevant product market. *See Global Discount Travel Serv., LLC v. Trans World Airlines, Inc.*, 960 F.Supp. 701, 704 (S.D.N.Y.1997) (citations omitted). When determining the relevant product market, the plaintiff must include all reasonably interchangeable or substitutable products. *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956). "A properly defined market includes potential suppliers who can readily offer consumers a suitable alternative to the defendants' services," *United States v. Long Island Jewish Med. Ctr.*, 983 F.Supp. 121 (E.D.N.Y.1997) (quoting *F.T.C. v. Butterworth Health Corp.*, 946 F.Supp. 1285, 1290 (W.D.Mich.1996), *aff'd*, 121 F.3d 708 (6th Cir.1997)), because "the test for a relevant market is not commodities reasonably interchangeable by a particular plaintiff, but 'commodities reasonably interchangeable by consumers for the same purpose.'" *Pepsico Inc. v. The Coca–Cola Co.*, 1998 WL 547088, at *10 (S.D.N.Y. Aug.27, 1998) (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430 (3d Cir.1997), *cert. denied*, 523 U.S. 1059, 118 S.Ct. 1385, 140 L.Ed.2d 645 (1998)). Evac does not define the relevant product market or offer any factual information about reasonably interchangeable services. The allegations in the Complaint give rise to any number of market definitions. The relevant product market, for example,

could be "emergency air transport services," "hospital air transport services" (encompassing emergency and inter-facility transfers), "emergency medical transport services" (encompassing land, sea, and air transport), or "medical transport services" (encompassing land, sea, and air transport for emergency services and routine transfers). Because Evac fails to define a relevant product market, it lacks standing to bring the instant claim. *See Hack v. President and Fellows of Yale College,* 16 F.Supp.2d 183, 196 (D.Conn. 1998) ("[W]here the relevant market proposed by plaintiff is not even alleged to encompass all interchangeable substitute products, the market is legally (rather than factually) insufficient, and a motion to dismiss is appropriate.") (internal quotation omitted).

Finally, Evac's Complaint fails to allege a relevant geographic market. It is well-settled that an antitrust complaint must allege a relevant market in which the anti-competitive effects of the challenged activity can be assessed. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). Although Evac's Complaint specifies a number of counties in Northern New York and Vermont it does not define a specific geographic market or explain how the Court should draw geographic boundaries. Without this definition, Evac cannot bring the instant claim.

Because Evac failed to define a relevant product and geographic market and failed to plead the necessary "antitrust injury," it does not have standing to bring a claim under the Sherman or Clayton Acts and, thus, these claims are dismissed against all of the Defendants.[4] *See Sage Realty,* 936 F.Supp. 130 (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat,* Inc., 429 U.S. 477,

489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)); *see also Balaklaw,* 14 F.3d at 797; *Re–Alco Indus., Inc.,* 812 F.Supp. at 391.

### D. Donnelly Act

Defendants next move to dismiss Evac's claim under the Donnelly Act. Defendants do not address this claim on its merits; instead, Defendants request that if the Court dismisses the federal claims, which it has, the Court decline supplemental jurisdiction over this state law claim. At this juncture, however, federal claims remain. Subject matter jurisdiction is an inquiry based on the case in its entirety rather than the status of individual defendants and, thus, the Court cannot properly decline supplemental jurisdiction at this time.[5] Accordingly, Defendants' motion to dismiss this claim is denied.

### III. Plaintiff's Cross–Motion to Amend

Evac cross-moves to amend its Complaint pursuant to FED. R. CIV. P. 15(a) to add causes of action under Section 1983 asserting violations of the Supremacy and Commerce Clauses. Defendants oppose this motion, asserting that Evac cannot maintain claims under either clause and, thus, the Court should deny leave to amend.

Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." Leave is not, however, automatic, and may be denied for good cause "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). "An

---

4. Standing is an element of subject matter jurisdiction that the Court is required to raise *sua sponte. See United States v. Hays,* 515 U.S. 737, 742–44, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). Because Evac lacks standing to bring a claim under the Sherman or Clayton Act, the Court must dismiss these

claims against all Defendants rather than only the moving Defendants Pataki and McMahon. *Id.*

5. Only Defendants Pataki and McMahon joined in the instant motion to dismiss.

amendment is considered futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Lamb v. Henderson,* 1999 WL 596271, at *2 (S.D.N.Y. Aug. 9, 1999) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block,* 608 F.2d 28, 42 (2d Cir.1979)). A court, therefore, is justified in denying an amendment that could not withstand a motion to dismiss. *Id.* (internal citations omitted); *see also Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (where granting leave to amend is unlikely to be productive it is not an abuse of discretion to deny leave to amend).

## A. Local Rule Compliance

Evac's cross-motion to amend does not comply with the Local Rules of the Northern District of New York. Local Rule 7.1(a)(4) requires that a party attach an unsigned copy of the proposed amended pleading to a motion brought under FED. R. CIV. P. 15. N.D.N.Y.L.R. 7.1(a)(4). This pleading must be a complete pleading, which, if accepted, will supersede the prior pleading in all respects. *See id.* Evac did not submit a copy of a proposed Amended Complaint. In the interest of judicial economy, the Court will consider the merits of Evac's motion despite this procedural deficiency.

## B. Supremacy Clause

Evac first moves to add a Section 1983 claim alleging that Defendants' actions violated its rights under the Supremacy Clause. Defendants assert that Evac cannot state a Supremacy Clause claim because there is "no state law/regulation/rule to target with a preemption challenge." Reply Mem. of Law at 4.

■ Even if Evac had alleged a rule or regulation, however, this claim could not stand because Supremacy Clause claims are not cognizable under Section 1983. *See Golden State Transit v. City of Los Angeles,* 493 U.S. 103, 108, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) ("Respondent argues that the Supremacy Clause, of its own force, does not create rights enforceable under § 1983. We agree."); *Associated Gen. Contractors, San Diego Chapter, Inc., Apprenticeship Training and Trust Fund v. Smith,* 74 F.3d 926, 931 (9th Cir. 1996); *Gustafson v. City of Lake Angelus,* 76 F.3d 778, 791 (6th Cir.1996); *Blue Sky Ent., Inc. v. Town of Gardiner,* 711 F.Supp. 678, 696 (N.D.N.Y.1989) (Munson, J) (citing cases). Thus, Evac's proposed amendment is futile because it could not withstand a motion to dismiss.[6] Accordingly, Evac's motion to amend on this ground is denied.

## C. Commerce Clause

Evac next seeks to amend its Complaint to add a cause of action under Section 1983 asserting that the Defendants' actions violated its rights under the Commerce Clause. Defendants again oppose the motion asserting that Evac does not have a cognizable Commerce Clause claim and that *Dennis v. Higgins,* 498 U.S. 439, 111 S.Ct. 865, 112 L.Ed.2d 969 (1991), the case cited by Evac, bears no relation to the case at bar.

In *Dennis,* the Supreme Court ruled that a plaintiff could assert a claim under the Commerce Clause via Section 1983. The Commerce Clause grants Congress the power to "regulate Commerce ... among the several states." Courts have interpreted the Commerce Clause broadly to limit the power of the states to discriminate or unduly burden interstate trade. *See id.* at 446, 111 S.Ct. 865.

■ Evac, however, does not allege that a state law or regulation impermissibly burdens interstate commerce. Rather,

---

**6.** Because Evac is challenging state action rather than a state law or regulation its reliance on *Western Air Lines, Inc. v. Port Auth. of New York and New Jersey,* 817 F.2d 222 (2d Cir.1987), *cert. denied,* 485 U.S. 1006, 108 S.Ct. 1467, 99 L.Ed.2d 697 (1988), is misplaced.

Evac alleges that because Defendants are not subject to taxation or FAA regulation, their participation in the market burdens interstate commerce. The Supreme Court, however, has "recognized that the Commerce Clause does not restrict the State's action as a free market participant." *Wyoming v. Oklahoma*, 502 U.S. 437, 459, 112 S.Ct. 789, 117 L.Ed.2d 1 (1992) (citing *Reeves, Inc. v. Stake*, 447 U.S. 429, 436–437, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980) and *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 806–810, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976)). In *Reeves*, the Supreme Court explained that *Alexandria Scrap*

> did not involve "the kind of action with which the Commerce Clause is concerned." Unlike prior cases voiding state laws inhibiting interstate trade, "Maryland has not sought to prohibit the flow of hulks, or to regulate the conditions under which it may occur. Instead, it has entered into the market itself to bid up their price," "as a purchaser, in effect, of a potential article of interstate commerce," and has restricted "its trade to its own citizens or businesses within the State."

447 U.S. at 435, 100 S.Ct. 2271 (internal citations omitted)

The actions Evac complains of fall squarely within this doctrine and, thus, Evac cannot maintain a Commerce Clause claim. Because Evac's Commerce Clause claim is not cognizable, it would be futile for this Court to grant Evac leave to amend its Complaint. Accordingly, Evac's motion for leave to amend pursuant to FED. R. CIV. P. 15(a) is denied.

### IV. Conclusion

Defendants McMahon and Pataki's motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion to dismiss Evac's due process, takings, and FAA claims is GRANTED. Defendants' motion to dismiss Evac's claim under the Donnelly Act is DENIED. The Court lacks subject matter jurisdiction over Evac's claims under the Sherman and Clayton Acts and, thus, these claims are DISMISSED against both the moving and non-moving Defendants. Plaintiff Evac's cross-motion to amend is DENIED in its entirety.

**IT IS SO ORDERED**