Norman TUCHMAN, Alan Tuchman, and Bechem Transport, Inc., Plaintiffs,

v.

State of CONNECTICUT, Department of Environmental Protection, and David A. Nash Defendants.

No. CIV.A.301–CV–1513(JCH).

United States District Court, D. Connecticut.

Feb. 8, 2002.

Kenneth A. Votre, Votre & Associates, New Haven, CT, John-Henry McKim Steele, Middlefield, CT, for Plaintiffs.

Mark P. Kindall, Atty. General's Office, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS [DKT. NO. 6]

HALL, District Judge.

In this case, the plaintiffs, Norman Tuchman, Alan Tuchman, and Bechem Transport, Inc., filed a claim under 42 U.S.C. § 1983 for violations of the federal and Connecticut constitutions against the defendants, the State of Connecticut, the Connecticut Department of Environmental Protection ("CTDEP"), and David Nash ("Nash"). The plaintiffs allege that the defendants' conduct violated the plaintiffs' rights under the Fifth and Fourteenth Amendments of the Constitution, specifically that defendants' conduct violated equal protection and procedural due process and constituted a taking of property without just compensation. The defendants filed a motion to dismiss for lack of subject matter jurisdiction, under Rule 12(b)(1), and failure to state a cause of action, under Rule 12(b)(6). The court addresses the defendants' Eleventh Amendment arguments and considers the sufficiency of the complaint to state a constitutional deprivation in order to survive Eleventh Amendment and qualified immunity analysis.[1]

### FACTUAL BACKGROUND

According to the complaint, this case stems from environmental legislation en-

---

1. The plaintiffs filed a motion seeking leave to file a sur-reply [Dkt. No. 14] that attempts to address defendants' jurisdictional challenges. The court grants the motion in the interests of fairness, given the disposition of the motion, and considers any new arguments where appropriate.

acted by the Connecticut legislature in 1992 to regulate the transshipment of hazardous waste. The legislation vested CTDEP with authority to regulate the industry, including permits for transshipment of waste. CTDEP did not take advantage of the regulatory authority until 1998.

In 1992, after the legislation passed, the plaintiffs notified CTDEP that they operated a hazardous waste transshipment business. From 1992 to 1998, the plaintiffs operated a hazardous waste transport, storage, and transshipment business with the full knowledge and consent of CTDEP. Plaintiffs had a formal license to transport and store hazardous waste for limited periods in Connecticut, but did not have a permit to transship the waste.

On or about August 24, 1998, CTDEP issued a Notice of Violation ("NOV") to the plaintiffs and instructed them to cease and desist all transshipment business or face daily fines of $25,000. The plaintiffs applied for a formal permit to conduct transshipment of hazardous waste, but CTDEP denied the permit. According to the complaint, CTDEP has never granted anyone a permit for transshipment of hazardous waste. The plaintiffs allege that CTDEP's actions injured their ability to conduct business and the value of their existing business. The plaintiffs claim that the defendants' actions violate equal protection and procedural due process and constitute a taking of property without just compensation.

**STANDARD OF REVIEW**

A Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction can be either a facial attack or a factual attack. A facial attack merely questions the sufficiency of the pleading. When a defendant raises a facial attack to subject matter jurisdiction, the court takes the allegations in the complaint as true and draws all inferences in favor of the non-movant. 2 James Wm. Moore et al., Moore's Federal Practice § 12.30[4] (3d ed.2001).

A motion to dismiss filed pursuant to Rule 12(b)(6) can only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering such a motion, the court must accept the factual allegations alleged in the complaint as true and all inferences must be drawn in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). A Rule 12(b)(6) motion to dismiss cannot be granted simply because recovery appears remote or unlikely on the face of a complaint. *Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir. 1996). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* (quotation omitted). "[B]ald assertions and conclusions of law will not suffice to state a claim ...." *Tarshis v. Riese Org.,* 211 F.3d 30, 35 (2d Cir.2000).

**DISCUSSION**

 The crux of the defendants' motion to dismiss is an argument that the Eleventh Amendment bars most of the plaintiffs' action.[2] "As a general matter,

---

**2.** The plaintiffs' sur-reply establishes the typical case for subject matter jurisdiction under § 1983 for actions against individuals and municipalities. The plaintiffs' argument, however, ignores the fact that the Eleventh Amendment is an absolute bar to actions against states and their alter-egos—state agencies and state officials in their official capacity. *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d

the Eleventh Amendment bars suits of any sort against a state in federal court unless the state has consented to be sued or Congress has expressly abrogated the state's immunity." *Kostok v. Thomas,* 105 F.3d 65, 68 (2d Cir.1997). Further, a claim against a state agency or state officer in his official capacity is essentially a claim against the State that implicates the Eleventh Amendment because the State is the "real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Santiago v. New York State Dep't of Corr. Servs.,* 945 F.2d 25, 28 n. 1 (2d Cir.1991). The Eleventh Amendment, accordingly, bars claims against the state, state agencies, and state officers in their official capacity—except to the extent the plaintiff seeks prospective injunctive relief from the state officer. *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Huang v. Johnson,* 251 F.3d 65, 69–70 (2d Cir.2001). A plaintiff can state a claim for money damages against the state officer in his individual capacity, as long as payment is not required from the funds of the state treasury. *Huang,* 251 F.3d at 70 (distinguishing *Ford Motor Co. v. Dep't of Treasury,* 323 U.S. 459, 462–63, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). Therefore, the court would have subject matter jurisdiction over claims against state officials in their official capacity for prospective injunctive relief and against state officials in their individual capacity for money damages.

In this case, the plaintiffs have included claims for injunctive relief and money damages against the State of Connecticut; CTDEP; and Nash, in his individual and official capacity. Plaintiffs have not provided any substantive grounds permitted by the Eleventh Amendment to proceed on any claims against the State of Connecticut or CTDEP.[3] Accordingly, the court grants the motion to dismiss all claims against the State of Connecticut and CTDEP based on Eleventh Amendment immunity.

Next, addressing the claims against Nash, the plaintiffs' claim for prospective injunctive relief against Nash in his official capacity must arise from a continuing violation of federal law. *See Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Ward v. Thomas,* 207 F.3d 114, 119–20 (2d Cir.2000). Nash challenges the sufficiency of the allegations to state a violation of federal law. The complaint states that Nash's actions in issuing a NOV and failing to issue a permit violate equal protection and procedural due process and constitute a taking of property without just compensation.[4] Complaint [Dkt. No. 1], ¶ 24. The court must determine whether the plaintiffs have "properly identified both a specific and ongoing violation of federal law" by Nash. *Farricielli v. Holbrook,* 215 F.3d 241, 246 (2d Cir.2000).

611 (1978), and its progeny are not applicable to this situation because the plaintiffs have claims against the state, a state agency, and a state official in his official capacity. The court will address the claims against the state official in his individual capacity separately.

**3.** The plaintiffs' opposition brief cites language from the dissent in *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (5–4 decision), to justify the claims against the State of Connecticut and CTDEP. To the extent that the statements in the dissent differ from the *Will* majority and subsequent holdings of the Supreme Court, the court cannot apply that legal interpretation to this case because it is not law.

**4.** The court must rely on its interpretation of the plaintiffs' complaint because the plaintiffs have not addressed Nash's arguments in their opposition memorandum.

■ "The Equal Protection Clause requires that the government treat all similarly situated people alike." *Harlen Assoc. v. Village of Mineola*, 273 F.3d 494, 499 (2d Cir.2001) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). Successful equal protection claims may be brought by a "class of one" where the plaintiffs allege that they have been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564–65, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v. Comm'n of Webster County*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989)). Before *Olech*, the Second Circuit permitted selective enforcement claims based on a "class of one" if the plaintiffs could "show both (1) that [they were] treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Harlen*, 273 F.3d at 499 (internal quotations omitted) (quoting *LaTrieste Rest. & Cabaret v. Village of Port Chester*, 40 F.3d 587, 590 (2d Cir.1994)). In *Harlen*, the Court of Appeals assumed without holding that plaintiffs who establish differential treatment could state an equal protection claim by showing "either that there was no rational basis for the unequal treatment received, or that the [unequal treatment] was motivated by animus." *Id.* at 500 (citation omitted).

■ In this case, the plaintiffs allege that the CTDEP has not issued any permits for the transshipment of hazardous waste. Further, they claim that, since their business operated for over six years after the relevant regulations were created, the plaintiffs are in a unique position regarding their rights. These allegations contradict any attempt to claim differential treatment and violation of equal protection. If plaintiffs received similar treatment compared to similarly situated individuals and, thus, were denied permits, they have no claim for equal protection. If no other similarly situated individuals exist, then plaintiffs have no claim for equal protection. Moreover, the plaintiffs have not alleged lack of rational basis, animus, or other impermissible criteria as the basis for the differential treatment or facts that could lead the court to infer those prohibited considerations. Accordingly, the complaint fails to satisfy either prong of the equal protection standard.

■ To prevail on the procedural due process claim, a plaintiff must establish that state action deprived him of a protected property or liberty interest. *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061–62 (2d Cir.1993). While the Fourteenth Amendment's procedural requirements protect property, that property can take many forms. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The term "property" denotes a broad range of interests that are secured by 'existing rules or understandings.'" *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (quoting *Roth*, 408 U.S. at 577, 92 S.Ct. 2701). "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Id.* (citation omitted).

"To have a property interest in a benefit, a person clearly must have more than

an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. "Thus, in order to establish a federally protectable property interest in a state or local permit for which a plaintiff has applied, the plaintiff must show that, at the time the permit was denied, there was no uncertainty regarding his entitlement to it under applicable state or local law, and the issuing authority had no discretion to withhold it in his particular case." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 n. 1 (2d Cir.1999). "In almost all cases, the existence of a federally protectable property right is an issue of law for the court." *Id.* at 263.

▪ In this case, the plaintiffs make conclusory allegations regarding Nash's unlawful refusal to grant a permit, but have not specified state law that entitles them to a permit. However, Nash points to Connecticut General Statutes § 22a–454 as the source for hazardous material permits. Section 22a–454 vests the Commissioner of Environmental Protection with significant discretion, stating that "[n]o permit shall be granted, renewed or transferred unless the commissioner is satisfied that the activities of the permittee will not result in pollution, contamination, emergency or a violation of any regulation adopted under [specified statutes]." Conn. Gen.Stat. § 22a–454. Furthermore, given the discretion in granting permits, the court cannot conclude that the plaintiffs' entitlement to a permit under state law was certain. Therefore, plaintiffs' have not alleged a federally protectable property right and, accordingly, fail to state a claim under procedural due process for Nash's refusal to issue a permit.[5]

▪ The impact of the NOV on the plaintiffs' business provides another possible grounds for the procedural due process claim.[6] However, "business in the sense of *the activity of doing business,* or *the activity of making a profit* is not property in the ordinary sense." *College Savs. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 675, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999); *see also Evac, LLC v. Pataki,* 89 F.Supp.2d 250, 257–58 (N.D.N.Y.2000) (holding that state providing free medical transportation did not deprive plaintiff, private medical air transport company, of property interest). The NOV does not deprive the plaintiffs of specific business assets; it only affects their ability to conduct business. Accordingly, the impact of the NOV on plaintiffs' business does not implicate a property interest for the procedural due process claim.[7]

---

**5.** Although the plaintiffs do not allege a violation of substantive due process, refusal to issue a permit may be the basis for such a substantive due process claim if the refusal is "so outrageously arbitrary as to be gross abuse of governmental authority." *Natale,* 170 F.3d at 263. However, as the court has already noted, the complaint states that no one else received a permit, which contradicts any inference that Nash's refusal to issue the permit was an arbitrary abuse of authority.

**6.** The plaintiffs focus on the business interest in their sur-reply. Pls.' Sur–Reply, at 4 ("[The state policy] involves the depravation [sic] of the Plaintiffs ability to earn a living as well as the diminution in value of the Plaintiffs' business.").

**7.** Nash also construes the complaint to state a liberty interest—"to choose one's field of private employment"—subject to procedural due process. The court would not interpret the plaintiffs' claims as a liberty interest, given their focus on "t[aking] or substantially devalu[ing]" the business. Complaint ¶ 24(c). Also, as the defendants note, a liberty interest in choice of employment would be subject to reasonable government regulation. *See Conn v. Gabbert,* 526 U.S. 286, 291–92, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).

■ Finally, the complaint claims an action for taking of property without just compensation. The takings clause seeks to prevent "the government from taking private property for public use without just compensation." *Palazzolo v. Rhode Island*, 533 U.S. 606, 121 S.Ct. 2448, 2458, 150 L.Ed.2d 592 (2001). If government regulation does not deny the plaintiffs all economically viable uses for the property, the court must consider "a complex of factors including the regulation's economic effect on the [property owner], the extent to which the regulation interferes with reasonable investment-backed expectations, and the character of the government action." *Id.* However, the court has concluded that the complaint fails to state a federally protectable property interest. Moreover, as alleged, the government regulation does not "forc[e] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Id.* (quoting *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960)). Accordingly, the complaint fails to state a claim for taking of property without just compensation.[8]

After evaluating the plaintiffs' constitutional claims, the court concludes that the allegations in the complaint fail to state a violation of federal law. Therefore, the plaintiffs' request for prospective injunctive relief from Nash in his official capacity exceeds the scope of the exception to the Eleventh Amendment. The court grants the motion to dismiss all claims against Nash in his official capacity.

■ Beyond the defendants' Eleventh Amendment arguments, Nash asserts the defense of qualified immunity with respect to the claims against him in his individual capacity. In order to prevail on an action for damages under § 1983 against a government official, the plaintiffs must show that the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Thus, the inquiry becomes first, whether the plaintiffs allege a violation of a constitutional right, and then second, whether that right was "clearly established" at the time of the alleged violation. *Gabbert*, 526 U.S. at 290, 119 S.Ct. 1292. After this test is met, the qualified immunity defense "protects a government actor if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of his challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir.2001) (citing *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The court has concluded that the plaintiffs' complaint fails to state a claim for violation of constitutional rights. Accordingly, the court finds that Nash is entitled to qualified immunity on

Further, as the court noted, *supra* note 5, it is possible the plaintiffs wish to state a substantive due process claim. However, the allegations in the complaint cannot even support an inference that Nash's issuance of the NOV was "so outrageously arbitrary as to be gross abuse of governmental authority." *See Natale*, 170 F.3d at 263.

8. The plaintiffs' sur-reply focuses on the takings inquiry and argues that the court should create a judicial exception to the Connecticut statute to "grandfather in" the plaintiffs' business because the plaintiffs operated the business for six years with the full knowledge of the state before the NOV. The plaintiffs fail to provide more than conclusory statements about their protected property interest and cite no precedent for such judicial activism and breach of federalism as a federal court creating an exception to a facially valid state statute.

all federal claims against him in his individual capacity.

Finally, the complaint asserts claims under the Connecticut constitution. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). While dismissal of the state claims is not absolutely mandatory, *Rosado v. Wyman,* 397 U.S. 397, 403–05, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the basis for retaining jurisdiction is weak when the federal claims are dismissed before trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Accordingly, the court declines to exercise jurisdiction over the state law claims, and those claims are dismissed.

## CONCLUSION

For the foregoing reasons, the court GRANTS the defendants' Motion to Dismiss [Dkt. No. 6]. Also, as indicated at note 1, the court GRANTS the Plaintiffs' motion for leave to file a sur-reply [Dkt. No. 14]. All claims are dismissed without prejudice to replead the claims if there is a factual and legal basis to do so that is consistent with this ruling. If the plaintiffs seek to replead, they must do so by February 28, 2002. The court notes that, if the plaintiffs choose to so replead, they must remedy the defects and comply with all requirements as identified in this ruling. An amended complaint containing merely "perfunctory or cosmetic changes .... may well be regarded by the court as a frivolous filing in violation of Fed. R.Civ.P. 11." *Economic Opportunity Commission v. County of Nassau,* 47

F.Supp.2d 353, 371 (E.D.N.Y.1999) (internal quotations and citations omitted).

**SO ORDERED.**